# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EHSAN GHOLESTANI, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )    Case No. CIV-25-1392-R |
| | ) |
| UNITED STATES DISTRICT COURT, | ) |
| et al., | ) |
| | ) |
| Respondents. | ) |

## <u>REPORT AND RECOMMENDATION</u>

Petitioner Ehsan Gholestani, a noncitizen[1] and Iranian national proceeding pro se, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE"). Doc. 11.[2] United States District Judge David L. Russell referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Respondents filed a Response, Doc. 15, and Petitioner has not yet filed a Reply.[3] For the reasons set forth below, the

---

[1] This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[2] On January 20, 2026, Petitioner filed an amended Petition for a Writ of Habeas Corpus ("Petition"). Doc. 11. This is the operative pleading. See Doc. 13. On January 23, 2026, the Court sua sponte added appropriate federal respondents in the action. Doc. 12.

[3] Petitioner's optional reply is due today. *See* Doc. 13. Given delays with his filings in ICE custody and the time-sensitive nature of this recommended relief, the undersigned concludes it is in the interest of justice to file the Report and Recommendation promptly. Petitioner may still object to this Report and Recommendation in the normal course.

undersigned recommends that the Court grant the Petition for habeas relief under 28 U.S.C. § 2241 and order Petitioner's release from ICE custody.

## I.     Background

Petitioner is a native and citizen of Iran.  Doc. 11-1 at 1; Resp. at 2.  In 2012, Petitioner left Iran due to religious and political "problems."  Doc. 11-1 at 1.  From 2012 to late 2023, Petitioner lived illegally in Venezuela where he applied for asylum but was ultimately denied "due to political relations with Iran."  *Id.*  On November 21, 2023, Petitioner illegally entered the United States at or near Eagle Pass, Texas.  *Id.*; Doc. 15-1 at 1.[4]  He was arrested and sentenced to five months in jail for illegal entry under 8 U.S.C. § 1325.  Doc. 11-1 at 1; Doc. 15-1 at 2; Resp. at 2.

In April 2024,[5] after serving his sentence for illegal entry, Petitioner was taken into ICE custody and, on May 1, 2024, ICE Enforcement Removal Operations ("ERO") initiated removal proceedings through a Notice to Appear.  Doc. 11-1 at 1; Doc. 15-1 at 2; Doc. 15-4 at 1; Resp. at 2.  At some point after that, Petitioner applied for asylum and

---

[4] Doc. 15-1 is ERO Officer Romeo Foncha's Declaration.  The undersigned notes that Mr. Foncha's declaration is not signed or dated.  However, Mr. Foncha's failure to sign or date his declaration is not material to the undersigned's analysis, and, given the time-sensitive nature of this recommended relief, the undersigned does not believe it is necessary to further delay Petitioner's case by ordering a signed and dated Declaration.

[5] Petitioner alleges that he was "moved to an Immigration Detention Facility" on April 21, 2024.  Doc. 11-1 at 1 (citation modified).  ERO Officer Foncha alleges Petitioner "was encountered by ICE ERO" on April 17, 2024.  Doc. 15-1 at 2.  It is not relevant to the disposition here exactly when Petitioner was taken into ICE custody.  The relevant date is when Petitioner's order of removal became final, which is undisputed.  Docs. 11-1 at 3 (Removal Order); 15-3 at 1 (same).

withholding of removal under the Convention Against Torture.  Doc. 15-2.  On February 5, 2025, Petitioner's applications for asylum and withholding of removal were denied and he was ordered removed to Iran.  Doc. 11-1 at 3; Doc. 15-3 at 1.  Petitioner waived his right to appeal, making his removal order final.  Doc. 15-1 at 2; Resp. at 2.

At some point after being ordered removed, Petitioner met with the Iranian consulate, which told him that he would not be given travel documents based on the documentation that he was able to provide.  Doc. 11-1 at 1.  On March 25, 2025, ICE ERO sent "a Travel Document Request to the Embassy of Pakistan, Interests Section of the Islamic Republic of Iran."  Doc. 15-1 at 2; *see also* Resp. at 2.  On July 28, 2025, ICE ERO initiated a standard 90-day post-removal order custody review interview and recommended that Petitioner remain in ICE custody.  Doc. 15-1 at 2; Doc. 15-5 at 1-4; Resp. at 3.

On August 4, 2025, the Iranian Interest Section informed ICE that it had denied Petitioner's travel request.  Doc. 15-1 at 2; Resp. at 3.  On August 14, 2025, and August 21, 2025, ICE informed Petitioner the Iranian consulate denied his travel document request.[6]  Doc. 11-1 at 1.  On October 20, 2025, ICE ERO requested information from its headquarters about third country removal for him.  Doc. 15-1 at 2; Resp. at 3.  On the same day, ICE ERO headquarters advised ERO Officer Foncha "they have not received any information regarding third country removals for Iran yet" and they "only have a tracking list of individuals to possibly add for potential third country removal."  Doc. 15-1 at 2.

_____

[6] It is not clear whether Petitioner made multiple requests for a travel document that were denied or whether he was twice told of the Iranian consulate's single denial.  What is clear is that by August 2025, ICE knew that Iran had denied Petitioner's travel document request.

On October 29, 2025, Petitioner filed his original petition in the Northern District of Texas.  Doc. 3.  On November 21, 2025, Petitioner's case was properly transferred to this District and referred to the undersigned.  Docs. 5, 6, 8.  On November 24, 2025, and December 23, 2025, the Court ordered Petitioner to file an amended petition that complies with the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules").[7]  On January 20, 2026, Petitioner filed an amended petition, which became the operative pleading (the "Petition").  Doc. 11.

On January 27, 2026, ICE ERO headquarters told Officer Foncha that "there are no substantial updates to provide at this time [with] regard to Gholestani's third country removal."  Doc. 15-1 at 2.  Nonetheless, Officer Foncha asserts that "ERO is currently working to facilitate Gholestani's removal from the United States in this case," and that Petitioner "is a priority for removal."  *Id.* at 3.  Officer Foncha further asserts that Petitioner's removal is significantly likely in the reasonably foreseeable future "based on the Government of the Islamic Republic of Iran's willingness to accept its citizens, and the number of successful removals ERO has made to Iran and third countries of removal from FY2024 to FY2026YTD."  *Id.* (citation modified).

Petitioner has now been in ICE custody for more than one year and nine months and has had a final order of removal for more than one year.  Petitioner asserts he has no criminal record other than his illegal entry charge and he is suffering severe mental health issues because he has been in custody since November 2023.  Doc. 11-1 at 1; Doc. 15-5 at

---

[7] The Court may apply the Habeas Rules to § 2241 petitions.  *See* Habeas Rule 1(b).

3.  He further alleges that every time he asks about his deportation "they tell [him] that this administration doesn't have to release [h]im." Doc. 11-1 at 1 (citation modified).

When Petitioner filed his Petition, he was detained at Cimarron Correctional Facility in Cushing, Oklahoma. Pet. at 1. He remains detained there. *See* ICE Online Detainee Locator System, https://locator.ice.gov/odls/#/results (last visited Feb. 13, 2026).

## II.   Petitioner's Claims

The undersigned liberally construes the Petition to raise two grounds for relief.

- **Ground One**: Petitioner alleges his continued detention is unlawful under 8 U.S.C. § 1231(a)(6), pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001), which limits an individual's detention during the post-removal period to a reasonable time.

- **Ground Two**: Petitioner asserts his continued detention violates his right to due process under the Fifth Amendment to the United States Constitution.

Pet. at 7-8. Petitioner seeks immediate release from ICE detention pursuant to an Order of Supervision. *Id.* at 8.

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court will not, however, provide a pro se litigant with arguments or act as his advocate. *Id.*

## III.   Relevant Framework

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through

5

habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at687-88).

Petitioner has a final order of removal, meaning that his detention is governed by 8 U.S.C. § 1231(a). *See* Resp. at 1. Under this statute, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The 90-day period is known as the "removal period." *Id.* After the removal period, ICE has discretion to detain inadmissible or criminal aliens. *Id.* § 1231(a)(6). However, detention of an alien subject to a final order of removal may not be indefinite and is presumptively reasonable for only six months. *See Zadvydas*, 533 U.S. at 701; *see also Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005) (reiterating "the reasonable period of post-removal detention is presumptively six months"). After that, a detainee may bring a habeas action to challenge his detention. *Zadvydas*, 533 U.S. at 688. "This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.

Therefore, to obtain habeas relief, a petitioner has the initial burden to show the post-removal-order detention has surpassed six months and to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *see also Soberanes*, 388 F.3d at 1311 ("If removal is not reasonably foreseeable, the court should hold continued detention unreasonable." (citation modified)). "After this 6–month period, once the alien provides good reason to believe that there is no

significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Further, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

## IV. <u>Analysis</u>

### A. Petitioner's continued detention under § 1231(a)(6) violates his Fifth Amendment Due Process rights pursuant to *Zadvydas*.

#### 1. Petitioner has met his initial burden.

Petitioner has met his initial burden under *Zadvydas* to (1) establish his post-removal-order detention has surpassed six months and (2) show "there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. Notably, Petitioner is not required under *Zadvydas* to "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable," *id.* at 702, only that that he has "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *id.* at 701.

Respondents contend Petitioner failed to meet his burden to show there is no significant likelihood of removal in the reasonably foreseeable future. Resp. at 4-6.[8]

---

[8] Respondents object to any argument by Petitioner that he should be released because he filed an application for asylum. Resp. at 6. The undersigned does not read Petitioner to be making such an allegation, but to the extent that he is, the undersigned agrees that the mere fact Petitioner made a claim of asylum does not entitle him to release during the pendency of his asylum proceedings. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 111 (2020) ("Whether an applicant who raises an asylum claim receives full or only expedited review, the applicant is not entitled to immediate release."). In any event, asylum

Respondents also allege Petitioner's due process claim is foreclosed by binding precedent because he has failed to show his removal is no longer foreseeable and that the possibility of third country removal defeats his claim under *Zadvydas*. Resp. at 6-7, 10.[9]

First, it is undisputed that Petitioner was ordered removed in February 2025. Doc. 11-1 at 3; Doc. 15-3 at 1. As such, Petitioner has been detained after his removal order well beyond six months, meaning that ICE is not entitled to a presumption of reasonableness for his detention. *See Zadvydas*, 533 U.S. at 701.

Petitioner has also "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. "To meet the burden of establishing this, Petitioner must demonstrate the existence of either institutional barriers to repatriation or obstacles particular to his removal." *Dusabe v. Jones*, No. CIV-24-464-SLP, 2024 WL 5465749, at *3 (W.D. Okla. Aug. 27, 2024) (R&R), *adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13, 2025); *see also Khaliq v. Noem*, No. CIV-25-1154-SLP, 2026 WL 196631, at *6 (W.D. Okla. Jan. 26, 2026) (confirming Judges in this District have "looked to whether the petitioner has demonstrated institutional barriers to repatriation or obstacles particular to his removal") (citation modified).

---

proceedings have concluded and Petitioner is now subject to a final order of removal, meaning 8 U.S.C. § 1231 and *Zadvydas* now govern his detention.

[9] Respondents also puzzlingly argue (1) Petitioner's additional claims for equitable relief are jurisdictionally barred, (2) his purported allegations that ICE violated its own regulations is not supported because ICE complied with its regulatory custody review requirements, and (3) his mental health allegations do not establish a basis for relief. Resp. at 7-10. However, the undersigned does not read the Petition to be raising any of those claims. As a result, the undersigned does not address these assertions.

Here, Petitioner has identified several barriers and obstacles. It is undisputed that Iran denied Petitioner's travel document request in August 2025. *See* Doc. 11-1 at 1; Doc. 15-1 at 2. Despite Iran's denial, however, ICE has failed to allege or provide any evidence they are attempting to re-submit or re-request a travel document for Petitioner to Iran. In addition, neither party has alleged that it is in possession of documents demonstrating Petitioner's Iranian citizenship, such as a birth certificate or passport. Rather, it appears ICE ERO has determined Petitioner cannot be removed to Iran and has instead shifted to attempt a third country removal. *See generally* Doc. 15-1 at 2-3 (discussing Officer Foncha's requests to ICE ERO headquarters about third country removal for Petitioner).

Petitioner therefore has demonstrated institutional barriers to his repatriation. *See Khaliq*, 2026 WL 196631, at *8 (finding petitioner showed good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future where efforts to remove him to his country of citizenship had been "sporadic" and there was there was no definitive response from that country); *Ambila v. Joyce*, No. 25-CV-00267, 2025 WL 1534852, at *4 (D. Me. May 28, 2025) (concluding petitioner's removal to his native country is not significantly likely to occur in the reasonably foreseeable future because "the Government has not produced evidence of a Congolese passport for [petitioner] or other travel documents demonstrating the temporal imminency of his travel, nor has it provided evidence indicating the DRC has consented to [petitioner's] removal there"); *Misirbekov v. Venegas*, No. 25-cv-00168, 2025 WL 2450991, *1 (S.D. Tex. Aug. 15, 2025) (finding petitioner is likely to succeed in his habeas petition because he "provided good reason to believe that there is no significant likelihood of removal in the foreseeable future," as he

could not be removed to his country of birth and "does not have citizenship nor any ties to any other country").

In addition, Petitioner has demonstrated obstacles to his removal to a third country. He alleges "ICE had tried to remove [him] to other countr[ies]" but that none of those countries would accept him. Pet. at 8. Similarly, ERO Officer Foncha states that as of October 20, 2025, ICE ERO had "not received *any information* regarding third country removals for Iran yet" and as of January 27, 2026, "there are no substantial updates" about Petitioner's possible third country removal. Doc. 15-1 at 2 (emphasis added). Moreover, neither Petitioner nor Respondents allege he has been asked to apply for any travel documents to a third country in the past 12-plus months he has been subject to a final removal order.

Therefore, ERO's inability to remove Petitioner to Iran and its lack of any "substantial updates" as to a third country removal show Petitioner's removal to either his home country or a third country is not significantly likely in the reasonably foreseeable future. Respondents contend that "Petitioner has offered no competent evidence that Iran will never accept him or that all avenues of removal, including third country removal, are foreclosed." Resp. at 5. However, that is not the standard. *See Zadvydas*, 533 U.S. at 701 (holding that petitioners do not need "to show the absence of *any* prospect of removal").

Further, Judge Jones in this District recently concluded in similar circumstances that a petitioner "provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" when (1) the petitioner had "previously applied for travel documents from Iran" and was denied and (2) respondents had "not

10

identified any countries with which any level of progress has been made toward obtaining the country's acceptance of Petitioner." *Momennia v. Bondi*, No. CIV-25-1067-J, 2025 WL 3006045, at *1 (W.D. Okla. Oct. 27, 2025); *see also Hernandez-Perez v. U.S. Immigr. & Customs Enf't*, No. CIV-25-1081-J, 2026 WL 49710, at *1 (W.D. Okla. Jan. 7, 2026) (finding petitioner met his burden to show there is no significant likelihood of removal in the reasonably foreseeable future where third countries had either denied or not responded to ICE's travel document requests and there had been "no updates on the removal efforts" from ERO); *Gomez v. Mattos*, No. 25-CV-00975, 2025 WL 3101994, at *5 (D. Nev. Nov. 6, 2025) (finding petitioner met his initial burden because he "has identified a barrier preventing him from being repatriated to [his home country], has demonstrated that he is not a citizen of any other country, and that ICE has not identified a third country that will accept him"); *Trejo v. Warden of ERO El Paso E. Mont.*, No. EP-25-CV-401, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025) (finding petitioner met his burden by demonstrating "that he is not a citizen of any other country, and that ICE has not identified a third country that will accept him").

### 2. Respondents have not met their burden.

Having concluded Petitioner established six months of post-removal-order detention and "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Respondents are correct "the mere fact that detention has exceeded six months does not render continued custody unlawful." Resp. at 4 (citing *Zadvydas*, 533 U.S. at 701).

11

However, as discussed above, Petitioner has shown his removal is not significantly likely in the reasonably foreseeable future—either to Iran or to any possible third country. Respondents assert that "ongoing attempts to secure travel documents defeat a claim that removal is not reasonably foreseeable." Resp. at 5 (citing *Abiodun v. Mukasey*, 264 F. App'x 726, 728 (10th Cir. 2008)). Respondents, though, have not met their burden.

At the outset, Respondents have provided no evidence of "ongoing attempts to secure travel documents" for Petitioner. Iran, Petitioner's country of citizenship, denied Petitioner's travel documents, and Respondents have not alleged any subsequent attempts to obtain travel documents to Iran. Respondents have failed to meet their burden demonstrating removal is likely in the reasonably foreseeable future even if there was a pending request for travel documents to Petitioner's native country—which here there is not. This conclusion is consistent with other courts. *See, e.g.*, *Johnson v. Young*, No. 12-cv-2339, 2013 WL 1571938, at *2 (W.D. La. Feb. 11, 2013) (finding the government failed to meet its burden by stating petitioner's native country had not yet refused to issue travel documents and the request was "pending") (R&R), *adopted*, 2013 WL 1571272 (W.D. La. Apr. 12, 2013); *Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006) (holding assertions from ICE that "it has followed up on its request for travel documents from India and done all it can" is "not sufficient evidence to rebut petitioner's showing that he is unlikely to be removed in the reasonably foreseeable future").

Further, ERO has recently confirmed there are "no substantial updates" about Petitioner's potential third country removal. Doc. 15-1 at 2. The fact that ERO has successfully facilitated removals to Iran and third country removals of Iranian citizens does

12

not alone mean that Respondents have met their burden as to Petitioner. *See, e.g., Rajigah v. Conway*, 268 F. Supp. 2d 159, 167 (E.D.N.Y. 2003) (finding "evidence of what the [foreign] government has done in the past with respect to petitioner and with respect to other nationals sheds little light on how the [foreign] government will respond to the current situation," and finding respondent did "not provide any conclusive evidence that petitioner will be removed in the near future" (citation modified)). A "mere intent to find a third country is too speculative to permit indefinite detention or to overcome [Petitioner's] showing." *Momennia v. Bondi*, No. CIV-25-1067-J, 2025 WL 3011896, at *10 (W.D. Okla. Oct. 15, 2025) (R&R), *adopted*, 2025 WL 3006045 (W.D. Okla. Oct. 27, 2025). Respondents have identified no country where any sufficient level of removal progress is being reported. And Respondents provide no evidence that Petitioner, a citizen of Iran, has any connections to any third country or that any third country would accept him.[10] As such, Respondents have not established Petitioner's removal to Iran or a third country is significantly likely in the reasonably foreseeable future.

Finally, and notably, "the passage of time takes on more significance as inaction and/or lack of progress in effectuating removal is precisely what *Zadvydas* guards against." *Khaliq*, 2026 WL 196631, at *9. Petitioner has been detained with a final order of removal for more than one year—and much longer when considering his immigration custody

---

[10] Petitioner asserts he illegally lived in Venezuela from 2012 through 2023 before entering the United States. Doc. 11-1 at 1. However, he also alleges that Venezuela denied his asylum application due to its political relations with Iran. *Id.* Respondents allege no facts relating to Petitioner's potential removal to Venezuela.

before the order of removal.  But ERO has only attempted to remove Petitioner to Iran one time and requested updates as to his third country removal only twice in that period.  Doc. 15-1 at 2.  With such sporadic attempts, Respondents cannot rebut Petitioner's showing that his removal is not significantly likely in the reasonably foreseeable future.  *See, e.g., Douglas v. Baker*, No. 25-cv-2243, 2025 WL 2997585 at *3 (D. Md. Oct. 24, 2025) (finding the passage of time coupled with "the absence of any evidence in the record that the government has used that time to advance efforts to remove" the petitioner demonstrate that detention "no longer authorized under § 1231(a)(6) and *Zadvydas*").

Therefore, Respondents have not met their burden to show Petitioner's removal is significantly likely in the reasonably foreseeable future.  This conclusion is consistent with other courts recently finding the government did not show removal is likely in the reasonably foreseeable future when it presented no concrete evidence of likely removal to a petitioner's home country or any viable requests to a third country for removal.  *See, e.g.*, *Khaliq*, 2026 WL 196631, at *9 (granting of habeas relief by Judge Palk after finding "prior efforts by ICE to remove" petitioner to his home country "have been sporadic and unsuccessful," and "the record lacks any evidence to show that removal of aliens similarly situated to" petitioner back to his home country "has been successful," without any evidence of considerations for third country removal (citation modified)); *Momennia*, 2025 WL 3006045, at *1 (granting of habeas relief by Jones Jones after finding petitioner's previous application for travel documents to Iran was denied and respondents "have not identified any countries with which any level of progress has been made toward obtaining the country's acceptance of" the petitioner); *see also Zhuzhiashvili v. Carter,* 802 F. Supp.

3d 1337, 1340 (D. Kan. 2025) (granting habeas relief where respondents did not "even identif[y] a single country to which removal might be possible"); *Vargas v. Noem*, No. 25-3155, 2025 WL 2770679, at \*3 (D. Kan. Sep. 29, 2025) (granting habeas relief where respondent failed to "even identif[y] any possible countries to which petitioner might be removed"); *Tadros v. Noem,* No. 25CV4108, 2025 WL 1678501, at \*3 (D.N.J. June 13, 2025) (finding petitioner had the better argument when "Respondents have not identified any country that has been willing to accept" the petitioner and "there are no travel or other documents to prepare for his departure").

As such, the undersigned concludes Petitioner is entitled under *Zadvydas* to habeas relief and immediate release from custody, subject to an appropriate Order of Supervision. *See* 28 U.S.C. § 2241(c)(3); *Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated." (citation modified)).

## V.    <u>Recommendation and Notice of Right to Object</u>

For the foregoing reasons, the undersigned recommends that the Court **GRANT** the Petition, Doc. 11, for habeas relief under 28 U.S.C. § 2241 for release from ICE custody. The undersigned recommends that the Court order Respondents to release Petitioner from custody immediately, subject to an appropriate Order of Supervision.  The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within five business days of the Court's order.

Parties are advised of their right to object to this Report and Recommendation.  *See* 28 U.S.C. § 636.  Any objection must be filed not later than **February 20, 2026**. *See id.*

§ 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **February 25, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 13th day of February, 2026.

_____
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE